DAVIDOFF HUTCHER & CITRON LLP                     Hearing Date: August 14, 2025
*Attorneys for The Galinn Fund LLC*              Hearing Time: 2:00 p.m.
120 Bloomindale Road
White Plains, NY 10605
(914) 381-7400
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.
Craig M. Price, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                           Chapter 11

THE COMPLEX AT PORT CHESTER LLC,                 Case No.: 25-22685 (SHL)

                        Debtor.
-------------------------------------------------------------x

### MOTION OF THE GALINN FUND LLC (I) TO DISMISS THE DEBTOR'S BANKRUPTCY CASE, OR IN THE ALTERNATIVE, (II) FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE, AND (III) FOR SANCTIONS

        The Galinn Fund LLC ("Galinn"), by and through its counsel Davidoff Hutcher & Citron

LLP, submits this emergency motion (the "Motion") seeking entry of an order (i) immediately

dismissing the Debtor's above referenced second chapter 11 case (the "Second Bankruptcy Case")

or, in the alternative, (ii) terminating the automatic stay pursuant to section 362(d) of title 11 of

Chapter 11 of the United States Code, as amended (the "Bankruptcy Code") to allow Galinn to

proceed with the Foreclosure Action,[1] and (iii) for sanctions on account of the Debtor's bad faith

filing of its Second Bankruptcy Case, and respectfully represents as follows:

### INTRODUCTION

        1.      As Galinn feared, after having its first bankruptcy case (the "First Bankruptcy

Case")[2] dismissed only two short months ago, the Debtor has again made another bad faith filing

---

[1]    Index No. 619869/2023, Suffolk County, N.Y. Supreme Court.
[2]    Case No. 25-22181 (SHL) (Bankr. S.D.N.Y) filed on March 5, 2025.

in a last last-ditch attempt to stave off the Foreclosure Action, the day before the foreclosure sale was to occur. As with the First Bankruptcy Case, the Debtor has again submitted a hastily prepared, hand-written petition, listing no attorney, and with minimal information. Sadly, however, the reality remains the same: the Debtor has no chance of reorganization as the Debtor's only asset, four (4) undeveloped parcels of land located in Port Chester, New York (the "Property"), is a non-performing asset, hopelessly underwater,[3] being subject to more than $13.2 million on a delinquent mortgage (the "Galinn Claim"). Moreover, real estate taxes and interest on the aforementioned mortgage continues to accrue and go unpaid. Other than the Property, the Debtor has no operations, no employees, no cash, and no counsel, and, once again, the only listed creditor is Galinn. The Property cannot, and does not, generate any income to service the secured debt or pay any expenses, and with no rent roll, no chance of being refinanced.

2.      On April 9, 2025, this Court held a hearing (the "Hearing") in the First Bankruptcy Case on Galinn's *Motion for Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code* (the "Lift Stay Motion") [First Bankruptcy Case; ECF Docket No. 15] and the *Motion to Dismiss the First Bankruptcy Case* [First Bankruptcy Case; ECF Docket No. 7] filed by the United States Trustee. At the Hearing, the Debtor promised to hire counsel, provide information regarding insurance, and make a payment to Galinn by April 23, 2025 of $112,500.00 as adequate protection. The Debtor failed on all accounts, and Galinn filed a *Notice of Non-Payment* on April 24, 2025 (the "Notice") [First Bankruptcy Case; ECF Docket No. 17].

---

[3]    As Galinn has previously argued, the appraisal (the "Appraisal") of the Property, attached hereto as **Exhibit A**, prepared by All Pro AMC, concludes that, as of March 14, 2025, the fair market value of the Property is only approximately $5,500,000. The Galinn Claim alone exceed $13.2 million. Thus, the Debtor has no equity in the Property, and the secured creditors are not adequately protected because the Property generates no cash flow, there are no additional assets to provide a replacement lien on, and there are no funds available to service the secured debt or make adequate protection payments.

3.      Importantly, fearing that the Debtor would again make another bad-faith filing (which he has now done), in the Lift Stay Motion and the Notice, Galinn specifically requested that any order be with prejudice so that the Debtor would be prohibited from making a second filing.  *See* e.g., Proposed Order attached to the Notice (asking that the Debtor be prohibited from filing again for six months to allow for the foreclosure sale to be completed).

4.      While the Bankruptcy Court did not enter its order with prejudice, it did dismiss the First Bankruptcy Case on May 22, 2025 [First Bankruptcy Case; ECF Docket No. 19].

5.      By filing another bankruptcy case, with no new or different facts, the Debtor is simply using bankruptcy as a sword to once again forestall the Foreclosure Action and, in doing so, abusing the bankruptcy process.  By filing on the eve of the foreclosure sale, the Debtor has insured that the foreclosure sale will not occur as scheduled, and all of Galinn's efforts to date in the state court – including obtaining a new foreclosure sale date, advertising the foreclosure sale, preparing for the foreclosure sale – will have been wasted.  Given the clear abuse, Galinn requests that not only should the instant bankruptcy case be dismissed, or in the alternative, the stay be lifted, but also that the Debtor be sanctioned and required to pay Galinn's fees associated with this Motion as well as the costs and fees associated with the aborted foreclosure sale.

## BACKGROUND

### A.  **The Property and its Current Condition**

6.      The Debtor is a single asset real estate entity whose sole asset is the Property. According to the Debtor's filed pleadings, the only creditor is Galinn.

7.      The Property currently consists of a vacant lot situated in the heart of Port Chester.

### B. **The Galinn Claim**

8.      The Galinn Claim is based on a mortgage agreement with the Debtor.  On or about May 23, 2022, the Debtor executed and delivered to Galinn: (i) a note (the "Initial Note") in the amount of $9,650,000.00, together with interest thereon, and (ii) as collateral security for the payment of the Initial Note, a mortgage (the "Mortgage") upon the Property as well as real property located in Suffolk County.  The Mortgage was duly recorded in the Office of the Clerk of both Suffolk and Westchester Counties.

9.      On or about February 7, 2023, the Debtor executed and delivered to Galinn an additional note (the "Gap Note") and mortgage (the "Gap Mortgage") in the amount of $1,600,000.00.  The Gap Mortgage was similarly recorded in Suffolk and Westchester Counties.

10.     Also on February 7, 2023, the Debtor executed and delivered to Galinn a certain consolidated mortgage note (the "Consolidated Note"), which consolidated the Initial Note and the Gap Note in the consolidated amount of $11,250,000.00.  Pursuant to the Consolidated Note, monthly payments of interest only in the amount of $112,500.00 were to commence on April 1, 2023 and continue on the first day of each and every month thereafter through and including August 1, 2023 at which time the principal balance if not sooner paid was to be due and payable.

11.     The Debtor entered into additional agreements with Galinn which were similarly recorded in Suffolk and Westchester Counties documenting the Consolidated Note.

12.     The Debtor did not challenge the Galinn Claim in the First Bankruptcy Case.

### C. **The Foreclosure Action**

13.     Owing to the Debtor's failure to make payments under the Consolidated Note, the Mortgage went into default, and Galinn commenced the Foreclosure Action.  *See* Summons and

Complaint filed in Suffolk County, Index No. 619869/2023, on August 9, 2023 (attached hereto as **Exhibit B**). A Notice of Pendency was later filed in Westchester County on December 28, 2023.

14. Subsequently, a Judgment of Foreclosure and Sale was granted on August 23, 2024 and entered on August 28,2024 by the Hon. Thomas F. Whelan, Justice of the Suffolk County Supreme Court (attached hereto as **Exhibit C**), which order was amended on January 24, 2025 by Order Amending Judgment of Foreclosure and Sale (the "Foreclosure Order") (attached hereto as **Exhibit D**). Among other things, the Foreclosure Order stated that the sum of $13,206,000.00 plus interest, fees and expenses was due to Galinn as of May 1, 2024, the Suffolk County property had been surrendered to Galinn, and that the Property should be sold at public auction. The first public sale of the Property did not occur owing to the commencement of the Chapter 11 Case.

15. Following dismissal of the First Bankruptcy Case, Galinn again went through the arduous process of scheduling a foreclosure sale, thus incurring substantial fees for counsel and advertising. Given that the sale was to occur on July 23, 2025, it too has been cancelled on account of the filing of the Second Bankruptcy Case.

**C.    The Debtor Has Not Made Adequate Protection Payments or Paid Taxes**

16. Neither in the First Bankruptcy Case nor the Second Bankruptcy Case, the Debtor has not offered Galinn cash payments as adequate protection pursuant to section 361(1) of the Bankruptcy Code, which is not surprising because the Debtor has no unencumbered cash from which to make such payments. As noted above, when this Court required that the Debtor commence making monthly adequate protection payments of $112,500.00 in the First Bankruptcy Case, the Debtor defaulted and failed to make such payment.

17. Additionally, the Debtor has no unencumbered property on which it can grant Galinn additional and/or replacement liens pursuant to section 361(2) of the Bankruptcy Code.

18.     Galinn does not believe that the real estate taxes are current or being paid in full when due, and it is uncertain whether insurance is being maintained on the Property.  Similarly, when the Court required that the Debtor provide proof of insurance at the Hearing, the Debtor mislead the Court into believing that such proof would be provided.  The Debtor failed to ever provide evidence of insurance.  *See* Notice.

**D.  The United States Trustee's Motion to Dismiss**

19.     The United States Trustee previously filed a motion to dismiss the First Bankruptcy [First Bankruptcy, ECF Docket No. 6] (the "Motion to Dismiss"), on account of, among other things, the Debtor's failure to secure counsel, file required schedules, and otherwise follow proper procedures. The Lift Stay Motion and Motion to Dismiss were each heard by this Court at the Hearing.

## ARGUMENT

**I.      This Court Should Dismiss the Second Bankruptcy Case**

20.     Section 1112(b) of the Bankruptcy Code provides that on request of a party in interest, and after notice and a hearing, "the court shall convert a case under [Chapter 11] to a case under chapter 7 or dismiss [it] …, whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1) (emphasis added).  Subsection (b)(4) sets forth various factors which constitute "cause" for the conversion or dismissal of a case. *See* 11 U.S.C. § 1112(b)(4).

21.     Under this provision, "cause" includes, among other things: "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;"; "failure to maintain appropriate insurance that poses a risk to the estate or to the public;" and "unexcused failure to satisfy timely any filing or reporting requirement established

by this title or by any rule applicable to a case under this chapter." *See* section 1112(b)(A), (C) & (F).

22.      The list in section 1112(b) is not exhaustive, and courts are free to consider other factors. *See In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997) (citing House Report No. 95–595, 95th Cong., 1st Sess. at 405-6, U.S. Code Cong. & Admin. News 1978, pp. 5787, 6363-64); *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

23.      In this instance, Galinn asserts that the Court should consider that the Debtor has filed its Second Bankruptcy Case 60-days after the First Bankruptcy Case was dismissed, and previously, in the First Bankruptcy Case:

- Failed to pay adequate protection payments as required by the Court;

- Failed to provide evidence of insurance as required by the Court;

- Failed to file schedules or other required information, including a declaration of the Debtor;

- Lacked counsel (and similarly does again in the Second Bankruptcy Case);

- Lacks any ability to reorganize; and

- Made misstatement to the Bankruptcy Court (such as that his counsel was on vacation in Italy) to extend the First Bankruptcy Case.

24.      Once a movant establishes cause, the bankruptcy court shall convert or dismiss, unless the respondent demonstrates that dismissal or conversion is not in the best interest of the estate. *See In re Just Plumbing & Heating Supply, Inc.*, No. 11-10151-MG, 2011 WL 4962993, at *2 (Bankr. S.D.N.Y. Oct. 18, 2011) ("Once the movant has established cause, the burden shifts to the respondent to demonstrate by evidence the unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate." (quoting Collier on Bankruptcy

¶ 1112.05 [1] (16th ed. 2009))); *In re Halal 4 U LLC*, No. 08-15216-MG, 2010 WL 3810860, at

*2 (Bankr. S.D.N.Y. Sep. 24, 2010) (same).

**II.    In the Alternative, Relief From the Stay is Warranted Pursuant to Section 362(d) of the Bankruptcy Code**

25.    Galinn is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362 (d),

which states:

> (d) On request of a party in interest and after notice and a hearing,
> the court shall grant relief from the stay provided under subsection (a) of this
> section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>> (1) for cause, including the lack of adequate protection of an interest in
>> property of such party in interest;
>>
>> (2) with respect to a stay of an act against property under subsection (a) of
>> this section, if—
>>
>>> (A)    the debtor does not have an equity in such property; and
>>>
>>> (B)    such property is not necessary to an effective
>>> reorganization;

26.    "Sections 362(d)(1) and 362(d)(2) are disjunctive.  This means the Court must lift

the stay if the movant prevails under *either* of the two grounds."  *In re Armenakis*, 406 B.R. 589,

619 (Bankr. S.D.N.Y. 2009) (emphasis in original) citing *In re Elmira Litho, Inc.*, 174 B.R. 892,

900 (Bankr. S.D.N.Y. 1994).  The moving party has the initial burden of establishing "cause" for

lifting the automatic stay. *Armenakis*, 406 B.R. at 619.  The existence of cause "should be

determined on a case by case basis." *Manhattan King David Rest., Inc. v. Levine*, 163 B.R. 36, 40

(S.D.N.Y. 1993) citing *Sonnax Indus., Inc. v. TRI Component Prods. Corp.* (*In re Sonnax Indus.,

Inc.*), 907 F.2d 1280, 1286 (2d Cir. 1990).  The decision whether to lift the automatic stay is

committed to the sound discretion of the bankruptcy judge and may be overturned only upon a

showing of abuse of discretion. *See Sonnax*, 907 F2d at 1286.

27.     Here, Galinn respectfully submits that it is entitled to termination of the automatic

stay for "cause" under both sections 362(d)(1) and (2) of the Bankruptcy Code because the Debtor

lacks any equity in the Property and Galinn's interest in the Property is not adequately protected

as the Debtor has not, and cannot, make adequate protection payments or provide any replacement

liens, and, given the circumstances, there is no reasonable plan of reorganization possible.

**A.  Debtor Has No Equity in the Property**

28.     To determine whether a secured creditor's interest is adequately protected, one

method the Court may consider is the property's "equity cushion"- the value in the property, above

the amount owed to the creditor with a secured claim, that will shield that interest from loss due to

any decrease in the value of the property during [the] time the automatic stay remains in effect. *In

re New Era Co.*, 125 B.R. 725, 728-29 (S.D.N.Y. 1991).

29.     Galinn submits that the Appraisal values the Property on a fair market basis at $5.50

million.  The Debtor's indebtedness to Galinn exceeds $13.2 million.  As such, the Property is

valued at $7.7 million less than the Galinn Claim.

30.     Thus, the Debtor's interest in the Property is hopelessly "under water" and there is

simply no equity cushion to protect Galinn's interest in the Property from diminution as of the

Petition Date.

**B.      Debtor Has Not Provided Adequate Protection**

31.     Section 361 lists three separate ways adequate protection may be provided to a

creditor: (i) cash payments or periodic cash payments; (ii) replacement lien; or (iii) granting such

other relief, as will result in the realization of the indubitable equivalent of the creditor's interest in such property. 11 U.S.C. § 361.

32.     "Adequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy." *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) (quoting *In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bank. D.N.J. 1986)).  The Supreme Court has stated that an "interest is not adequately protected if the security is depreciating during the term of the stay." *United Sav. Ass'n v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 370 (1988).  The Debtor has the statutory burden of proving adequate protection. 11 U.S.C. § 364(d)(2).

33.     In this case, no adequate protection has been offered by the Debtor because the Property generates no cash flow and the Debtor, a mere shell entity, has no ability or wherewithal to make such adequate protection payments.  In the meantime, the Property is subject to continuous diminution in value because the Debtor has no income, cash flow, or unencumbered funds to pay the necessary expenses (including insurance, real estate taxes, maintenance, security, etc.) of the Property.  Similarly, as a single asset real estate company, the Debtor lacks any other assets upon which to offer Galinn a replacement lien.

34.     Courts regularly grant relief from the automatic stay where the movant has demonstrated a post-petition diminution in the value of the collateral.  See e.g., In re 160 Bleecker St. Assocs., 156 B.R. 405, 413 (S.D.N.Y. 1993) (reversing ruling of bankruptcy court and vacating stay because value of collateral had declined by $600,000 (from an appraised value of $1.6 million) over the course of one and a half years); In re Domestic Fuel Corp., 70 B.R. 455, 463 (Bankr. S.D.N.Y. 1987) (granting relief from the automatic stay under Section 362(d)(1) where movant demonstrated decline in value of stock pledged by debtor and debtor failed to establish movant was adequately protected); In re Armenakis, 406 B.R. 589, 620- 21 (Bankr. S.D.N.Y. 2009)

(granting creditor's motion for relief from stay upon the finding that secured creditor had proven decline or threat of decline in value of collateral and debtor had not offered any proof that creditor was adequately protected).

35.     Moreover, it is well-settled that the "continued failure to make monthly payments under loan documents can constitute cause for granting relief from the automatic stay" where "the failure to make monthly payments corresponds with a nonexistent equity cushion." *In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 749 (Bankr. S.D.N.Y. 2004) quoting *Equitable Life Assurance Society of the United States v. James River Assocs.* (*In re James River Assocs.*), 148 B.R. 790, 797 (E.D. Va. 1992). The Debtor has not made any payments under the Consolidated Note and, given the circumstances of owning only a vacant, unoccupied lot which generates no income, the Debtor will be unable to pay any such amounts in the future.

36.     Accordingly, Galinn should be granted relief from the automatic stay under Section 362(d)(1) of the Bankruptcy Code for "cause".

## C.  Relief from Stay is Appropriate Because the Property Is Not Necessary for an Effective Reorganization

37.     Lack of equity and failure to provide adequate protection is not necessarily fatal under Section 362(d)(2) if a debtor can prove that the property is necessary to an effective reorganization. *In re Steffens*, 275 B.R. 570, 578 (Bankr. D. Colo. 2002). But to succeed in that regard, the burden shifts to a debtor to show that there is a reasonable prospect of a successful organization within a reasonable period of time. *United Sav. Ass'n v. Timbers of Inwood Forest Assocs. Ltd.*, 484 U.S. 365, 375-76 (1988). If the debtor is unable to make such a showing, the court must grant relief from the stay.

38.     This means Debtor must establish "a reasonable possibility of a successful reorganization within a reasonable time." *Id.* Importantly, "[t]he mere indispensability of the

property to the debtor's survival and the debtor's hopes of reorganization are insufficient to justify continuation of the stay when reorganization is not reasonably possible." *Id.* at 370-71. "[F]anciful calculations that [are] conclusory and unsubstantiated expressions of optimism" are insufficient to meet this burden. *Pegasus Agency Inc. v. Grammatikakis (In re Pegasus Agency, Inc.*) 101 F.3d 882, 884 (2d Cir. 2001); *see also In re Kent Terminal Corp.*, 166 B.R. 555, 562 (Bankr. S.D.N.Y. 1994) ("It goes without saying that an effective reorganization cannot be based solely on speculation.").

39.     Here, it is clear that the Debtor cannot propose a confirmable plan within a reasonable period of time. The Property was intended to be a mixed-use twelve story development; it remains an empty lot. The Debtor has been wholly unsuccessful in its attempts to obtain the necessary financing. The Debtor has not, in the intervening 60-days since the dismissal of the First Bankruptcy Case, found a "white knight" or other financing provider. Courts have regularly lifted the stay where no hope of a reorganization exists. *See In re YL West 87th Holdings I LLC*, 423 B.R. 421, 443 (Bankr. S.D.N.Y. 2010) (granting relief under section 362(d)(2) where "the prospect of the Debtor obtaining DIP financing on a priming basis is also completely unsupported. Without a source of funding on a non-priming basis, it is not possible for the Debtor to complete the Project and implement an effective reorganization. Such non-priming source does not exist."); *In re Diplomat Elecs Corp.*, 82 B.R. 688, 693 (Bankr. S.D.N.Y. 1988) (no sufficient showing of effective reorganization where "the debtors' hopes and aspirations for reorganization, although well-intended, have not been supplemented by any showing that a reorganization is possible, let alone reasonably likely within a reasonable period of time"); *In re Crosswinds Assocs.*, 1996 WL 350695, *2 No. 96.Civ. 4572 (BSJ) (S.D.N.Y. June 25, 1996) (no feasible plan of reorganization because of "the need for substantial repair and maintenance, and the Debtor's inability to pay for such

work."); *In re Asheville Bldg. Assocs*, 93 B.R. 913, 917 (Bankr. W.D. N.C. 1988) (debtor's plan "required $600,000 to $800,000 new capital which the Debtor had no evidence of a realistic ability to supply-from itself or others. In short, the Debtor's plan is no more than 'hope' and is not a realistic prospect for a successful reorganization."); *Midlantic National Bank v. Anchorage Boat Sales, Inc. (In re Anchorage Boat Sales*), 4 B.R. 635, 641 (Bankr. E.D.N.Y. 1980) (no effective reorganization where (1)"gap of more than $100,000 between the value of the collateral and the amount of … claim"; (2) "debtor's operations are not likely to be profitable in the course of the next several months"; (3) "[n]othing in the record would indicate that debtor has an outside source of funds which would enable the debtor to finance a plan"; and (4) "[n]othing in the record would indicate the debtor is able to generate sufficient revenues to meet its other obligations"); *Kaplan Breslow Ash*, 264 B.R. at 332 (stay relief granted when a property is so underwater that "it would require [a sponsor] … to invest more than [the property] is worth.").

40.     In both Chapter 11 cases, the Debtor simply lacks sufficient funding to develop the Property or to pay for the Property's maintenance and upkeep.  Without any committed financing, the proposed construction project is simply too speculative, and the Debtor has no reasonable probability of successfully reorganizing within a reasonable time.  As such, the Court should lift the stay and allow Galinn to proceed with its Foreclosure Action, including the judicial sale of the Property.

## III.     Sanctions Should be Imposed Requiring the Payment of Galinn's Reasonable Attorneys' Fees and Expenses

41.     Bankruptcy Courts may impose sanctions upon, among other things, a finding of bad faith.  *See In re Markus*, 78 F.4th 554 (2nd Cir. 2023); and Federal Rules 37 and 45(g) of the Federal Rules of Civil Procedure (as made applicable in bankruptcy cases by Bankruptcy Rules 7037 and 9016).

42.     In this instance, the Debtor was aware that it had not remedied any of the outstanding issues which caused its First Bankruptcy to be dismissed.  Moreover, it has again filed its case without counsel, which is required in Chapter 11 cases, nor has it filed any of the other required information, such as a debtor's declaration or schedules – instead, it has again filed a bare-bones, hand-written petition to forestall a state court foreclosure sale.

43.     As noted above, Galinn incurred substantial expense and time to reschedule the foreclosure sale after the initial foreclosure sale was delayed on account of the First Bankruptcy Case.  Galinn will now be forced to again incur reasonable attorneys' fees at the state court level, and other costs, such as publication of a notice related to the foreclosure sale, directly on account of the Debtor's bad faith filing.  Moreover, Galinn is also forced to bare costs associated with the prosecution of this Motion.  As such, Galinn requests that the Bankruptcy Court use its inherent power to sanction the Debtor and impose on it Galinn's reasonable fees and costs associated with scheduling and advertising the prior foreclosure sale, the costs associated with scheduling and advertising a new foreclosure sale, and the reasonable attorneys' fees and costs associated with this Motion.

## **CONCLUSION**

For all the reasons set forth herein, Galinn respectfully requests that the Court enter an order either: (i) dismissing the Second Bankruptcy Case or, in the alternative, (ii) terminating the automatic stay to enable Galinn to proceed with the Foreclosure Action, (iii) imposing sanctions on the Debtor and granting Galinn its reasonable attorneys' fees and costs, and (iv) such other and further relief as may be just and proper.

Moreover, Galinn respectfully requests that, should the Court be inclined to grant the relief requested in this Motion, that such relief be with prejudice should the Debtor attempt to commence

a third bankruptcy case in the future.


Dated: White Plains, New York
July 23, 2025

<div style="margin-left: 40%;">

Respectfully submitted,
DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for The Galinn Fund*

 By: /s/ Robert L. Rattet
Robert L. Rattet
Jonathan S. Pasternak
Craig M. Price
120 Bloomindale Road
White Plains, New York 10605
(914) 381-7400

</div>